IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| ANTHONY T. PATTI, | : | BANKRUPTCY NO.: 5-03-bk-53860-JJT |
| DEBTOR | : | |
| ANTHONY T. PATTI, | : | {**Nature of Proceeding**: Complaint to Determine Dischargeability} |
| PLAINTIFF | : | |
| vs. | : | |
| WILLIAM COLANDUONI and TANA COLANDUONI, and DAVID GNEITING and ANGELINA GNEITING, | : | |
| DEFENDANTS | : | **ADVERSARY NO.: 5-09-ap-00097-JJT** |

# OPINION

A Complaint to Determine Dischargeability has been filed by the Debtor in this case.

The history has been set forth in an earlier disposition and is again set forth, as follows:

The parties are in relative agreement as to the procedural background of this case. Sometime in 1991, the Pennsylvania Department of Environmental Protection issued to the Debtor a tank closure order. Thereafter, in 1999, the subject lands previously holding the underground storage tanks on commercial property owned by the Debtor were sold to Mr. and Mrs. Gneiting. The objectors herein, William and Tana Colanduoni, received title to the subject property by deed of Mr. and Mrs. Gneiting in August of 2005. In between the 1999 and 2005 deeds of the subject property, the Debtor filed a Chapter 7 bankruptcy on August 8, 2003, which case was closed on January 23, 2004. Prior to and subsequent to the Chapter 7 Petition date of August 8, 2003, the Debtor asserts that he was not aware of any environmental issues relating to the subject property or that there was any claim for environmental damage stemming from the events of 1991 when the Debtor was issued a tank closure order by the Pennsylvania Department of Environmental Protection.

*In Re Patti*, No. 5-03-bk-53860-JJT, slip op. at 1 (Bkrtcy.M.D.Pa., Feb. 2, 2009).

As further background, Complaints were filed in State Court by the Colanduonis against the Gneitings and Patti and subsequently stayed pending a determination of the Complaint before me.

While the Complaints in State Court were not made a part of the adversary record, an Amended Complaint appears at Doc. #27 in the main case number 5-03-bk-53860-JJT. The allegation of liability against the Debtor is set forth in Counts 12 through 14. Liability hinges on arguments of strict liability under the Storage Tank and Spill Prevention Act. (STSPA), negligence, and fraud.

At earlier junctures in this proceeding, it seemed apparent that *Avellino & Bienes v. M. Frenville Co. (Matter of M. Frenville Co.)*, 744 F.2d 332 (3d Cir.1984), a Third Circuit case identifying when a cause of action would arise, would be dispositive. In fact, the parties were near settlement. When *Frenville* was overruled by *In re Grossman's Inc*., 607 F.3d 114 (3d Cir.2010), the parties were so advised and settlement discussions evaporated, putting the case in its present posture.

Frankly that posture is not clear to me. At trial, the parties submitted a very sparse record consisting mostly of several stipulated exhibits.

I know from a review of the Amended Complaint that the Plaintiffs are relying on counts alleging negligence, fraud, and STSPA violations. I assume that these claims relate to the period of time when the Debtor owned the real estate, i.e., up to February, 1999. I will frame the issue by asking whether the Debtor's Chapter 7 bankruptcy filing of August 8, 2003, and his subsequent discharge, bar the current state court litigation.

Debtor's bankruptcy was administered as a "no asset" case by his Chapter 7 Trustee. No distribution occurred. Because the Gneitings were not named on the Debtor's schedules as a potential creditor, I assume that Patti believed he had no reason to anticipate that the real estate he had earlier sold to the Gneitings had the potential to generate a claim against him. Even if the possibility of lingering environmental problems did not concern the Debtor, it is likely that the Gneitings were recipients of warranties in connection with the transfer of real property. Generally speaking, in order to be discharged, a "known creditor" must be listed. 11 U.S.C. § 523(a)(3). If I apply the test found in *Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir.1995), I can conclude that the status of Gneitings as creditors was "reasonably ascertainable." As reasonably ascertainable creditors, they could also be categorized as "known creditors" entitled to notice of the bankruptcy. *Id.* at 351. The impact of not naming a creditor is set forth in *Judd v. Wolfe*, 78 F.3d 110 (3d Cir.1996).

> Section 727(b) of the Bankruptcy Code defines the scope of a Chapter 7 debtor's discharge: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section *discharged the debtor from all debts* that arose before the date of the order for relief under this chapter...." 11 U.S.C. § 727(b). (Emphasis added.) As other courts have observed, "The operative word in this section is 'all.' " *In re Beezley*, 994 F.2d 1433, 1435 (9th Cir.1993) (citing *In re Mendiola*, 99 B.R. 864, 865 (Bankr.N.D.Ill.1989) (regarding § 727(b), a prebankruptcy debt is discharged whether or not it is scheduled); *In re Stecklow*, 144 B.R. 314, 317 (Bankr.D.Md.1992) ("breadth of the discharge" under section 727 is "comprehensive") and *In re Thibodeau*, 136 B.R. 7, 8 (Bankr.D.Mass.1992) (" § 727(b) itself makes no exception for unlisted debts")). Because section 727(b), on its face, does not create an exception for unlisted or unscheduled debts, every prepetition debt is discharged under section 727(b) subject to the provisions of section 523(a)(3). We thus turn to section 523(a)(3).
>
> Section 523(a)(3) creates two categories of unscheduled debts: (1) those that are "of a kind specified in paragraphs (2), (4), or (6) of this subsection," and (2) those that are not of such kind. Those debts that are not of the kind specified in paragraphs (2), (4), or (6) of section 523(a) are resolved by reference to section 523(a)(3)(A).

[K:\Cathy\Opinions-Orders filed 2011\5-09-ap-00097_Patti.pdf]     3

Case 5:09-ap-00097-JJT    Doc 47    Filed 04/13/11    Entered 04/13/11 14:27:00    Desc
Main Document      Page 3 of 6

> Section 523(a)(3)(A) excepts from discharge certain debts that were:
>
>> Neither listed nor scheduled . . . in time to permit . . . timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing . . . .
>
> Because this is a "no-asset" Chapter 7 case, the time for filing a claim has not, and never will, expire unless some exempt assets are discovered; thus, section 523(a)(3)(A) cannot be applied in Judd's circumstances. *See Stone v. Caplan*, 10 F.3d 285, 289, n. 13 (5th Cir.1994) (observing that if no proof-of-claim deadline has ever been set, section 523(a)(3)(A), by its own terms, is inapplicable). Because section 523(a)(3)(A) does not apply here, Judd's debt to Wolfe was discharged by operation of law at the time of her discharge on July 14, 1993, unless her debt to Wolfe falls under sections 523(a)(2), (4), or (6).
>
> Debts listed in sections 523(a)(2), (4) and (6) describe debts which arise from intentional torts such as fraud. They include debts incurred by "false pretenses, false representation or actual fraud ... " (523(a)(2)); debts incurred by "fraud or defalcation while acting as a fiduciary ..." (523(a)(4)); and debts "for willful and malicious injury ..." (523(a)(6)). Section 523(a)(3)(B) excepts from discharge "intentional tort" debts that were not listed. Since section 523(c) provides that the dischargeability of these debts must be determined by the bankruptcy court and Bankruptcy Rule 4007(c) requires a complaint to be filed before the discharge is entered, section 523(a)(3)(B) preserves the right of these creditors to litigate the dischargeability of their debts.
>
> For most creditors, the fundamental right enjoyed in bankruptcy is the right to file a proof of claim because filing a claim is obviously necessary in order to participate in the distribution of the estate's assets. *In re Stark*, 717 F.2d 322 (7th Cir.1983). Section 523(a)(3)(A) honors this right, by excepting from discharge, debts owed to creditors who did not know about the case in time to file a claim. In a case where there are no assets to distribute, however, the right to file a proof of claim is a hollow one. An omitted creditor who would not have received anything even if he had been originally scheduled, has not been harmed by omission from the bankrupt's schedules and the lack of notice to file a proof of claim. Thus, in a no-asset Chapter 7 case where no bar date has been set, we conclude that there would be no purpose served by reopening a case to add an omitted creditor to the bankrupt's schedules. If the debt at issue is not a debt described under section 523(a)(2), (4) or (6), the debt has been discharged by virtue of section 727(b), whether or not it was listed. If, however, the debt is a debt that falls under sections 523(a)(2), (4) or (6), the debt is not discharged by virtue of section 523(a)(3)(B). (Footnotes omitted.)

*Id.* at 113.

The impact of not identifying the Gneitings as creditors is thus. I find that the Gneitings were not identified on Debtor's schedules despite being "known" creditors. The obligations owing Gneitings, if any, were nonetheless discharged because of the fact that this was a no asset case under the principles espoused in *Judd v. Wolfe*. Notwithstanding that conclusion, should the Gneitings possess a claim that arose out of Patti's alleged fraud, such a claim would not be discharged for the reasons enunciated in *Judd*.

The Defendants, Colanduonis, also allege a claim arising out of a STSPA violation. STSPA was enacted in 1989. 35 P.S. § 6021.101 et seq. I assume if the Debtor had liability under STSPA, it was actionable on the date Debtor filed bankruptcy and would be discharged by his bankruptcy. Compare *Matter of Penn Cent. Transp. Co.*, 944 F.2d 164, 168 (3d Cir.1991). While *Penn Central* centered around liability under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), the court concluded that, unless there are assertable claims at the time of bankruptcy, there can be no discharge. In *Penn Central*, CERCLA was not enacted until 1980, after the *Penn Central* bankruptcy. That is not the case here where STSPA was in effect prior to Debtor's bankruptcy.

Perhaps more on point is *Matter of Reading Co.,* 115 F.3d 1111, 1121 (C.A.3 (Pa.),1997), where a reorganized debtor attempted to enjoin the successor of its assets from pursuing contribution claims by reason of an environmental cleanup. The *Reading* Court concluded that, although the successor's claim could not be directly discharged by reason of Reading's bankruptcy discharge, since its claim was derivative of the claim of the United States under CERCLA, and the United States claim was discharged, the successor's claim was thus barred.

I can only presume, based on this record, that the ostensible claims of the Colanduonis

are derived from their position as successor in interest to the Gneitings. If Gneitings' claims are discharged, then so too are the claims of Colanduonis. My conclusion is that the counts of negligence and STSPA claims of Gneitings and Colanduonis are discharged, but the fraud claim, if any, would survive the bankruptcy discharge since the Gneitings were not named on the Debtor's schedules.

    My Order is attached.

By the Court,

John J. Thomas, Bankruptcy Judge
(CMS)

Date: April 13, 2011